**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **RAVEN LILLIE,** | )( **Civil Action No.: 4:21-cv-3740** |
| | )( **(Jury Trial)** |
| *Plaintiff*, | )( |
| | )( |
| **v.** | )( |
| | )( |
| **THE CITY OF ARCOLA, TEXAS,** | )( |
| **CHIEF MICHAEL V. ELLISON,** *Individ.,* | )( |
| **and HECTOR AARON RUIZ,** *Individ.,* | )( |
| | )( |
| *Defendants.* | )( |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES RAVEN LILLIE complaining of THE CITY OF ARCOLA, TEXAS, CHIEF MICHAEL V. ELLISON, *Individually,* and HECTOR AARON RUIZ, *Individually,* and alleges as follows:

**INTRODUCTION**

1.  This is a civil rights action for Constitutional violations and state and federal law personal injuries suffered by Plaintiff Raven Lille ("Plaintiff" or "Lillie"). Plaintiff brings this action for compensatory damages under 28 U.S.C. §§ 1331 and 1343 (jurisdiction), 42 U.S.C. § 1983 and 1988 and the Texas Tort Claims Act § 101.021 because Defendants jointly and severally deprived

1

Plaintiff of her federally protected rights, privileges and immunities and engaged in violations through the use of a motor vehicle.

2.   Plaintiff brings this action against the City of Arcola, Texas, Chief Michael V. Ellison, Individually and former Arcola Police Officer Hector Aaron Ruiz, Individually, pursuant to Tex. Civ. Prac. & Rem. Code § 71.000 *et. seq*. and as applied through 42 U.S.C. § 1983 and § 1988.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction over the federal claims of Plaintiff in this action, under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C §§ 1983 and 1988, the 4th and 14th Amendments to the U.S. Constitution and supplemental jurisdiction under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims.

4.   Venue is proper in this Court pursuant to 28 USC § 1391(b) as all material facts out of which this suit arises occurred within the Southern District of Texas, Houston Division.

## PARTIES

5.   Plaintiff is an individual who resides in Fort Bend County, Texas.

6.   Defendant THE CITY OF ARCOLA, TEXAS is a governmental body existing under the laws of the State of Texas, a general law municipality incorporated in Fort Bend County, Texas and may be served with process by serving the Mayor Fred A. Burton at 13222 Highway 6, Arcola, Texas 77583

or by serving City Attorney J. Grady Randle at his business address for service

of process Memorial City Plaza II, 820 Gessner, Suite 1570, Houston, Texas

77024-4278.

7.    Defendant HECTOR AARON RUIZ, *Individually*, is a former employee of

The Arcola Police Department and/or The City of Arcola, Texas and he may

be served with process at the Federal Detention Center Houston, 1200 Texas

Avenue, Houston, Texas 77002 or wherever he is found.

8.    Defendant MICHAEL V. ELLISON, *Individually,* is the Chief of Police of

Arcola, Texas and he may be served with process at 13222 Highway 6, Arcola,

Texas 77583.

## FACTS

9.    The Arcola Police Department ("Arcola PD") is a department of the City of

Arcola, Texas ("Arcola"). Arcola, at all relevant times, was the employer of

Hector Aaron Ruiz ("Ruiz").  The chief policy maker for Arcola PD is Arcola

Police Department Chief Michael V. Ellison ("Ellison").

10.   At all relevant times herein, Ellison was acting under the color of law and in

the course and scope of his position as the Chief of Police for Arcola PD and

was himself directed by the City of Arcola.  Likewise, at all relevant times

herein, Defendant Ruiz was acting under the color of law and in the course

and scope of his employment for approximately fourteen (14) months with

Arcola PD. He had previously served as a reserve officer for approximately six (6) months. Accordingly, Arcola is liable directly and vicariously for the actions complained of herein.

### History of City of Arcola PD

11.    The City of Arcola PD has a reputation for officers harassing women while on duty and at extra jobs. This was documented in 2019 by the Texas Commission on Law Enforcement (TCOLE) by a 2019 e-mail complaining that officers in Arcola were "while on duty…flirting with female employees and customers [at a small Mexican restaurant]" as well as other complaints of malfeasance.

### Ruiz Harassing Contacts with Plaintiff – On Duty and Supervised

12.    Plaintiff had previously met Ruiz on occasions he would patronize the restaurant where she worked. Ruiz would come to the restaurant with his supervisor, both always in uniform. His supervisor sometimes wore a green uniform, and it is believed, worked with dogs. Ruiz's supervisor made Plaintiff uncomfortable because he would make comments to Ruiz in front of her about Plaintiff's looks and would make sexual innuendo. The supervisor encouraged Ruiz also to make sexually charged comment, proposition-like actions and braggadocio around Plaintiff. This attention to and harassment of

Plaintiff from the Arcola PD, including supervisors of the Arcola PD, was unwelcome and improper.

13.     On or about August 11, 2019, Maria Miramontes and her son were passengers in her boyfriend's vehicle. Her boyfriend was pulled over in/near Arcola for suspected driving while intoxicated by what Miramontes believed was a Fort Bend County Sheriff. Ruiz appeared on the scene in his Arcola PD vehicle equipped with a dash camera video. Ruiz had a body worn camera. Ruiz told her that, despite her not being intoxicated, she could not drive her boyfriend's vehicle home. Rather, Ruiz instructed that Miramontes had to go in his Arcola PD vehicle with her. Ruiz also told her that if she did not go with him, she would be arrested for public intoxication and her nine-year-old son would go into the custody of Child Protective Services.  She knew this was a threat to take away her son.  Ruiz used his power and authority as a police officer – and the tangible personal property of his car, to intimidate, threaten and harass Miramontes.

14.     Ruiz threatened that if she did not comply with his wishes, he could arrest her, deport her, and take her child from her. None of this was known to be video or audio recorded despite the availability of vehicle and body cameras. Miramontes was placed in the passenger seat of the Arcola PD vehicle by Ruiz and her son was placed in the back seat. Ruiz entered the police car and took

5

Miramontes purse and her phone from her. She was not free to go. Ruiz said he was taking her home and kept telling her on the ride that now she owed him, and he kept placing his hands on her. Miramontes was frightened and sickened and at the same time was trying to shield and protect her son. Ruiz used his badge and the threat of governmental power, his car as the vehicle to effectuate the violations herein, coupled with a mother's natural instinct and desire to protect her son, as a conduit for intimidation and harassment.

15.   Once they arrived at her home at 1122 Lawson Road, Rosharon, Texas 77583, Ruiz told Miramontes that she was required to walk her inside. Once inside, he called her into her bedroom and told her he must talk to her and to close the door. Then he grabbed her hair and told her that now she had to pay him back. She pulled away when Ruiz tried to kiss her. Ruiz told her again that his police car was outside, and he could take her to jail and her son into government custody. Ruiz locked the door, unholstered his gun and placed it on the bed within his reach, told her she had to pay, and sexually assaulted Miramontes. Ruiz then pulled up his pants, holstered his gun and left in his police vehicle.

16.   Miramontes was scared to report what had happened due to her immigration status and Ruiz's threats. She moved from her house because of the trauma.

She quit her job so that Ruiz and his supervisor could not find her. She attempted suicide.

17.   Miramontes became aware that Ruiz was a serial sexual assaulter when she saw in the news he had been arrested for sexual assault of Plaintiff Raven Lillie herein (*infra*). Miramontes contacted Fort Bend County authorities and confirmed that Ruiz had sexually assaulted other women while in uniform and on the job.

18.   On or about the night of November 16, 2019 Plaintiff Raven Lillie, 23, was driving her vehicle when she was stopped by Arcola Police Officer Hector Aaron Ruiz in an Arcola police car wearing an Arcola police uniform. The squad car had a dash video camera. Ruiz requested Lillie's ID and Lillie gave Ruiz her ID. Ruiz's police vehicle had a dash camera and audio recorder and Ruiz was wearing a body worn camera.

19.   During questioning by Ruiz Lillie admitted to drinking earlier in the evening at a bar and gave permission for Ruiz to search her vehicle. Lillie was very worried she might get arrested for DWI.

20.   Ruiz ordered Lillie to follow him and they drove to an area in Fort Bend County. Once there Ruiz got into Lillie's car and unbuckled his pants and indicated that he would arrest her for multiple crimes if a sex act was not

performed. Ruiz took his service weapon out and placed it in view of Lillie causing her great fear.

21.  No one was nearby and it was dark.

22.  Due to fear of her life and arrest Lillie performed a sex act on Ruiz. After Ruiz then got out and threw Lillie's ID into her vehicle.

23.  Ruiz's confidence and actions indicated to Lillie these activities had been carried out before.

24.  During and since these events Lillie has suffered at least depression, anxiety, and intense fear.

25.  This sexual harassment and assault were not a single incident but was instead part of a pattern and practice of Ruiz and Arcola PD of the harassment and assault of women.

26.  Arcola Police Chief Michael Ellison was delegated policy making authority for the policies, procedures, rules, discipline, supervision, and training for the Arcola PD by the City of Arcola. At the time that Miramontes was sexually assaulted, on or about August 11, 2019 and in November 2019 when Plaintiff was sexually assaulted, Ellison was delegated policy making authority for the policies, procedures, rules and training for the Arcola PD and intentionally failed to take timely and adequate measures to protect female citizens, female detainees and their minor children.

27. Notice of Legal Claims to the Defendants under the Texas Tort Claims Act: Defendants had actual notice of all violations under the Texas Tort Claims Act. *See City of SA v. Tenorio,* 543 S.W. 3d 772 (Tex. 2018). Plaintiff also sent a notice letter to Defendant City of Arcola.

*28.* Arcola PD has a long-standing pattern of problems with their officers: Despite being a small police force of approximately seven (7) officers, Arcola PD has a long history of problems with their own officers. Since Ruiz's arrest, in January 2020 Arcola PD Officer, Cartrell Vonshae Carhee, was indicted by a grand jury for theft by a public servant. He stole two designer purses while wearing his uniform as an officer for Arcola PD.

*29.* The fact that a supervisor encouraged Ruiz to make advances to and sexual harassment of Miramontes while on duty and in uniform is evidence of a standing issue regarding violations of constitutional rights to basic non-sexual treatment by law enforcement.

30. Defendants (alone and in concert), under color of law, violated Plaintiff's constitutional right to basic, non-sexual treatment and under no circumstances were their actions objectively reasonable, ultimately causing her injuries. While detained by the Arcola PD, Plaintiff had a right to be safe from Ruiz's reprehensible conduct and Defendants had a duty to keep her safe from that

harm. Plaintiff's treatment defies all logic and clearly shows deliberate indifference.

31.     At the time these events were occurring in late 2019, the Arcola PD Chief of Police was being evaluated and the City of Arcola was considering his "evaluation, reassignment, duties, discipline or dismissal." Despite the sexual assaults coming to the attention of the Mayor and City Council members Ellison is still Chief of Police as the filing of this instant civil action.

## Policies of the Arcola PD

32.     Policy of Deception and Threat.  Arcola PD has a policy, not unlike other police departments and law enforcement agencies, that police officers are allowed to deceive – to cajole, lie, and threaten - in order to obtain information and to procure action from detainees.  This was a policy and/or a custom of the Arcola PD.  For example, in *Frazier v. Cupp*, 394 US 371, 89 S.Ct. 1420 (1969) a confession (giving up the 5th Amendment right) was not deemed involuntary merely due to the fact that misrepresentations were made to the detainee there by the police in order to procure action; i.e. assent to an interview and ultimate confession[1].  Likewise, in a case where the police

---

[1] Notably, Illinois is the *only* state in the United States that has made it illegal for police to use deception while interrogating people under the age of 18;

"allegedly pushed [a detainee] against a wall and told him to sign a confession or he would go to jail for a 'long time'", a confession on those facts was found to have been freely given, *See Mason v. State*, 116 S.W. 3d 248, 252, 264 (Tex. App – Houston [14th Dist.] 2004), disc.rev.ref'd.  This deception can take many forms – such as an officer saying, "if you do not talk to us, I am going to charge you with…"; or "we have found evidence that implicates you, so you had better….."; etc.  The Arcola PD police were similarly empowered. Here, Miramontes and Lillie were likewise deceived; they were threatened that they could not leave the detention of Ruiz, that they had to do what Ruiz told them to do such as, in the case of Miramontes, accept a ride from Ruiz to her home, and to let him into her home on the threat of arrest, on threat of being deported, and on threat of having her child removed from her custody and in the case of Plaintiff follow him to a secluded area, threaten arrest and death. This was in line with the policy and procedure of the Arcola PD that deception, cajoling, lies, and threats could be made to extract action on the part of detainees, like your Plaintiff here.  This led directly to the sexual

_____

https://www2.illinois.gov/Pages/news-item.aspx?ReleaseID=23581
https://www.cbsnews.com/news/illinois-police-lying-minors-banned-law/

assault of the Plaintiff– and to the assault of Miramontes and perhaps more by Ruiz.

33.    Watchguard Policy – or otherwise Pattern and Practice and Custom.  Arcola 76-77 November 2, 2018 announcement to police officers of a new Watchguard system – the video system for police vehicles in Arcola.  The Court in Civil Action No. 4:21cv927, *Miramontes v. Arcola, et al.,* ordered Arcola PD by July 13, 2021 to provide "any policies regarding the use of cameras in vehicles that were in effect immediately prior to the policy issued on July 19, 2019".  Arcola PD produced a policy from 2001 that does not reference Watchguard – but only deals with the long-antiquated technology of the time (20 years ago) – manual video tapes.  There was no policy provided prior to July 19, 2019 regarding Watchguard. The video policy (**Exhibit 1**) does not even talk to body worn cameras or the taping of the suspect vehicles and therefore leaves to each officer his/her own discretion; the discretion of the officer being the official policy.  This Court order coupled with the lack of production of any policy by Arcola indicates there was in fact no policy and no training as to the use of the Watchguard system itself in the vehicles. A July 19, 2019 email from the police chief to patrol officers (**Exhibit 2**) indicates that the police officers are routinely misusing the Watchguard system and not properly utilizing it at all times.  The failure to properly record

stops in a proper manner was a custom at Arcola PD. Even after this time, there was no supervision of officers to ensure they were actually following this directive.  As a result of the failure to train to the policy and to supervise with respect to this Watchguard system, and the failure to have any actual policies in place with reference to their use, Ruiz and his interactions with the Plaintiff and Miramontes were not monitored and he was therefore able to sexually assault them.  Here, the lack of a policy was the policy and allowed police officers to have *carte blanche* as to the use, lack of use, or misuse of these cameras.  Notably, these video systems are intended for the protection of the police officers as well as the general public (see **Exhibit 1** – Policy Statement – the intent is for "increased accountability, [and to]…protect the officer himself from groundless allegations of misconduct").  Police officers are aware that this monitoring means they must adhere to standards of accountability; likewise, the absence of the policy on this newer Watchguard system and video of the interior of vehicles is itself a policy and custom that allows police officers to do as they please, how they please, and without supervision.  This failure to train and supervise, and the failure to have an institute and enforced policy – is the policy.  Ruiz did as Arcola PD officers were to do – he acted in accordance with policy and custom by not utilizing

the video monitoring system.  These resulted in the injury-causing events described herein.

34.     Body Cameras Policy – or otherwise Pattern and Practice and Custom.  Arcola 78-79 (**Exhibit 3**) is a December 11, 2019 email (after the events of the Plaintiff's and other's sexual assaults) seeking any "new directives/policies for…body cameras…subject to review prior to adoption".  Arcola 14 **(Exhibit 4)** is a February 21, 2020 email from the Arcola PD police chief "To All Patrol Personnel" in the use of body cameras mandating that they are to be used in all interactions with the public and detainees.  The Miramontes Court ordered Arcola by July 13, 2021 to provide any policies regarding the use of body cameras that were in effect immediately prior to the policy issued February 2020. Arcola PD produced no such policy.  The Texas Occupations Code §1701.655 actually requires a policy:

>     (a)     A law enforcement agency that receives a grant to provide body worn cameras to its peace officers or that otherwise operates a body worn camera program shall adopt a policy for the use of body worn cameras.
>     (b)     A policy described by Subsection (a) must ensure that a body worn camera is activated only for a law enforcement purpose and must include:
>     (1) guidelines for when a peace officer should activate a camera or discontinue a recording currently in progress, considering the need for privacy in certain situations and at certain locations;
>     (2) provisions relating to data retention, including a provision requiring the retention of video for a minimum period of 90 days;
>     (3) provisions relating to storage of video and audio, creation of backup copies of the video and audio, and maintenance of data security;
>     (4) guidelines for public access, through open records requests, to recordings that are public information;
>     (5) provisions entitling an officer to access any recording of an incident involving the officer before the officer is required to make a statement

about the incident;
(6) procedures for supervisory or internal review; and
(7) the handling and documenting of equipment and malfunctions of equipment.

The Texas Attorney General has issued Opinion KP-0185 verifying that law enforcement agencies using body cameras must have policies (**Exhibit 5).** This Miramontes Court's own order coupled with the lack of production of any policy in effect as of the time of the sexual assault of the Plaintiff and Miramontes by Ruiz indicates there was in fact no policy, no training, and no supervision as to the use of body cameras as required by law. Notably, the Texas Commission on Law Enforcement (TCOLE) has promulgated sample policies (**Exhibits 6 and 7)** for the use of body cameras; sample policies ignored by Arcola PD.  Here, the lack of a policy was the policy and allowed police officers, as with the Watchguard system, to have *carte blanche* as to the use, lack of use, or misuse of these cameras. Body cameras too are intended for the protection of the police officers as well as the general public (**Exhibit 1).**   Police officers wearing body cameras are aware that this monitoring means they must adhere to standards of service and morality in their duties; likewise, the absence of the policy is itself a policy and custom that allows police officers to turn the cameras off when they please to be able to do as they please, how they please, and without supervision.  This failure to train and supervise, and the failure to have an institute and enforced policy

– is the policy as to body cameras. Ruiz did as Arcola PD officers were to do – he acted in accordance with policy and custom by not utilizing the body camera system in use at Arcola PD. The also resulted in the injury-causing events here.

**CAUSES OF ACTION AGAINST DEFENDANTS THE CITY OF ARCOLA, TEXAS, POLICE CHIEF ELLISON and FORMER ARCOLA POLICE OFFICER HECTOR AARON RUIZ,**

35. **The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows**:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges, immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

36. **The 4th Amendment to the United States Constitution provides**:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

16

37.  **The 14th Amendment to the United States Constitution provides**:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

38.  **The elements of a cause of action under § 1983 against a governmental entity are:**

a.  Plaintiff is deprived of rights under the United States Constitution;

b.  Such deprivation is caused by a person acting under color of state law;

c.  The governmental entity adopted, or failed to adopt, a policy statement, ordinance, regulation or decision adopted and promulgated by the governmental entity's lawmaking officers or by an official to whom the law makers delegate law-making authority or a persistent, widespread practice of officials or employees of the governmental entity which, though not authorized or officially adopted and promulgated, the policy is so common and well settled as to constitute a custom that fairly represents policy of the governmental entity; and,

d.  The governmental entity was deliberately indifferent to the party's constitutional rights.

## CIVIL RIGHTS VIOLATION
### [42 U.S.C. § 1983 and Constitutional Violations Against Ruiz]

39.     Ruiz engaged in deliberate and outrageous invasion of Plaintiff's bodily integrity that shocks the conscious in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Plaintiff re-alleges and incorporate all allegations of this Complaint as if fully set forth herein.

40.     Ruiz, acting within the scope of his agency, recklessly and with the intention of causing Plaintiff severe emotional distress, engaged in extreme and outrageous conduct by sexually assaulting and harassing Plaintiff, threatening t arrest her and displaying his gun, and by promoting a threatening and unduly hostile and antagonistic environment. Ruiz's conduct is particularly egregious as Plaintiff was in the custody of The City of Arcola.

41.     Ruiz misused and abused the official power granted to him by the City of Arcola, Ellison, and the Arcola PD in the performance of his official duties thereby causing harm to Plaintiff.

42.     Ruiz, by his acts and omissions alleged above, under color of law and acting pursuant to the customs, practices and policies of Fort Bend County, deprived Plaintiff of her rights to bodily integrity, thereby violating the Fourth Amendment to be secure in their persons, the Fourteenth Amendment right not to be deprived of life and liberty without due process and equal protection

under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, by failing to provide all for which Ruiz is liable to Plaintiff pursuant to 42 U.S.C. § 1983.

43.    Ruiz acted against Plaintiff through official policies, practices, and customs with malice, deliberate, callous, and conscious indifference to the constitutional rights of Plaintiff. Furthermore, the incidents complained of were not reasonably related to any legitimate governmental objective, as there is no legitimate governmental objective in sexual contact and sexual assault of a citizen and/or a detainee.

44.    As a direct and proximate result of Ruiz's acts, which were so outrageous in character and extreme in degree to be utterly intolerable in a civilized community, Plaintiff suffered severe emotional distress and was injured and damaged thereby.

45.    As shown below, Ruiz's actions were part of a policy and practice condoned by both Arcola PD and Ellison.

46.    Ellison as Chief of Police was well aware of the lack of proper camera policies needed to prevent officer unlawfulness which resulted in the unlawful detention, arrest, and sexual assault of at least two women.

## CIVIL RIGHTS VIOLATION
### [42 U.S.C. § 1983 and Constitutional Violations Against the City of Arcola/Chief Ellison]

47.   In addition, and in the alternative, the City of Arcola (and its governmental branch, Arcola PD), including but not limited to Ruiz (alone and in concert and/or individually) engaged in a policy and practice of deliberate indifference to the care and custody of citizens and detainees that resulted in the unlawful detention, false arrest, and sexual assault of Plaintiff herein as well as Miramontes and possibly other female citizens and detainees.

48.   In addition, and in the alternative, Arcola PD gave inadequate training to civilian and officer personnel, including but not limited to Ruiz, on physical contact with detainees, and failed to supervise when detentions occurred.

49.   The City of Arcola and Arcola PD, including but not limited to Ruiz (alone and in concert and/or individually) endangered female citizens and detainees, including Plaintiff herein, resulting in the sexual assault of Plaintiff, Miramontes and possibly other females.

50.   Plaintiff contends that policies, procedures, practices and customs of the City of Arcola and Arcola PD, including but not limited to Ruiz (alone and in concert and/or individually) put Plaintiff in an inherently dangerous situation and violated her rights under the Fourth and Fourteenth Amendments to the Constitution of the United States for which Plaintiff seeks recovery.

51.   Plaintiff contends that the failures to train and supervise staff regarding the policies, procedures, practices and customs of the City of Arcola and Arcola

PD, including but not limited to Ruiz, put Plaintiff and Miramontes in a dangerous situation and violated their rights under the Fourth and Fourteenth Amendments to the Constitution of the United States for which Plaintiff seeks recovery.

52.   During the relevant time period contemplated by this cause of action, the City of Arcola and Arcola PD, including but not limited to Ruiz (alone and in concert and/or individually) failed to follow state and federal laws, federal and state regulations with regard to female citizens and female detainees generally and specifically Plaintiff.

53.   During the relevant time contemplated by this cause of action, the City of Arcola and Arcola PD, including but not limited to Ruiz (alone and in concert and/or individually) failed to follow their own written policies and procedures and those of the State of Texas and other authorities on standard of care and lack of sexual contact for those in custody, those riding in official vehicles and female citizens while in their official capacity.

54.   Facts at the time of filing this Complaint supporting each of the elements of a § 1983 claim against the City of Arcola and Arcola PD, and its employees, listed above are found above and applicable to all claims, but may be summarized as follows:

   a.   Failed to properly train, hire, control, discipline and supervise employees;

b.   Failed to establish and maintain a proper policy for dealing with the safety of female detainees/female citizens;

c.   Failed to provide protection from sexual predators for female detainees/citizens;

d.   Failed to establish and maintain proper policies for assurance of safety of female detainees/prisoners;

e.   Promulgated, condoned, or showed indifference to improper policies or customs; and

f.   Continued such practices of improper policies or customs as to constitute custom representing policy.

55.   These actions by Defendants the City of Arcola and Arcola PD, subjected Plaintiff to confinement with constitutionally inadequate safety protections such as:

a.   Evidence of sexual assaults that are inaccurate, incomplete, and not transmitted to the Texas Rangers or other law enforcement or prosecution authority, as required;

b.   Confinement conditions that do not ensure safe, humane, and decent conditions free of sexual assault;

c.   Complete failure to assess ongoing sexual harassment and assaults upon female detainees/female citizens;

d.   Staffing the police force with officers with no (or insufficient) training, oversight, supervision, or discipline; and,

56.   These actions by the City of Arcola and Arcola PD further violated the rights of Plaintiff through Defendants' policies such as:

a.   Evidence of sexual assaults that are inaccurate, incomplete, and not transmitted to the Texas Rangers, as required;

b.   Detainee conditions that do not ensure safe, humane, and decent conditions free of sexual assault;

c.   Complete failure to assess ongoing sexual harassment and assaults upon female detainees;

d.   Staffing the police force with officers with no training, oversight, supervision, or discipline;

57.   The City of Arcola and Arcola PD, intentionally, and with deliberate indifference, deprived Plaintiff of her clearly established federal constitutional rights, including, but not limited to:

a.   Her right to reasonably safe conditions of detention, assuming only for purposes here that such detention was justified;

b.   Her right to be free from sexual assault and violation of her body;

c.   Her right to be free from cruel and unusual punishment;

d.   Her right to be free from sexual assault and harassment while inside an official City of Arcola and/or Arcola PD vehicle.

58.   The City of Arcola and Arcola PD clearly breached their constitutional duty to tend to basic human needs of persons within their charge, acting with deliberate indifference and subjective recklessness to the clear needs of female detainees and citizens, and Plaintiff herein, of which they had subjective knowledge. The City of Arcola and Arcola PD deliberately disregarded the serious risk of harm to other female detainees and female

citizens. Further, the City of Arcola and Arcola PD failed to take the requisite steps to protect female detainees/citizens from such egregious, unconstitutional, unwarranted, and deliberately indifferent actions.

59.   **No qualified immunity**:   City employees can be entitled to qualified immunity to their individual liability, but this immunity is waived if the complainant shows that:

    a.    the individual's acts deprived the party of constitutional rights under color of law

    b.    the deprived rights were clearly established and constitutional rights which existed at the time of the acts; and

    c.    such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

60.   The Defendants, persons acting under color of state law, enforcing the City of Arcola and Arcola PD policies and procedures for detention of persons, or by their failure to properly train in the handling of detained persons, deprived Plaintiff of her civil liberties without due process of law by failing to keep her free from unlawful detention, false arrest, and sexual assault by the Arcola PD officers during her detention and interaction with Arcola PD. No reasonable official could have believed that failure to protect female inmates from sexual assault was lawful. The acts of the Defendants, when viewed objectively, were

unreasonable under the circumstances.  Therefore, qualified immunity is waived in this case.

61.   The Defendants involved in this case, acting under color of law, were deliberately indifferent to the excessive risk to Plaintiff's safety in their acts, or failures to act. Such acts violated and deprived Plaintiff's clearly established constitutional rights and were not objectively reasonable.

62.   The acts of the City of Arcola (including its governmental branch, Arcola PD) clearly violated established statutory or constitutional rights of which a reasonable person would have known, afforded by the United States Constitution.

63.   The acts of Defendants were so obviously and grossly wrong, that only a plainly incompetent entity or officer, or one who was knowingly violating the law, would have performed such an act, and therefore, Defendants are liable to Plaintiffs for the damages caused by their actions.

64.   The aforementioned acts resulted in the sexual assault of Plaintiff, which in turn proximately caused her injuries.

## TEXAS TORT CLAIMS ACT CLAIMS OF SEXUAL ASSAULT AND BATTERY FALSE INPRISONMENT AGAINST THE CITY OF ARCOLA[2]

65.   Ruiz, acting within the scope of his employment with the City of Arcola, assaulted and battered Plaintiff by threatening her, forcing her into sexual acts, without her effective consent and while she was a person under detention. Ruiz, acting within the scope of his employment/agency, intentionally and unlawfully caused Plaintiff to fear offensive and unlawful contact over which she had no control as a detained person, and Ruiz intentionally and unlawfully caused such offensive conduct to occur. Ruiz openly, and with apparent authority, used the City of Arcola property to perpetrate these acts.

66.   Ruiz, and therefore the City of Arcola falsely imprisoned Plaintiff by willfully detaining her without her consent by confining her to a police vehicle and then her home for the purpose of sexually assaulting her. At the time of the imprisonment, Plaintiff knew that her freedom of movement had been restricted and that the other City of Arcola and Arcola PD officers, all males,

---

[2] Following the cases of *Sweetin v. City of Texas City*, 2020 WL 6130881 (S.D. Tex. 2020) and *Sligh v. City of Conroe*, 2021 WL 1978820 (S.D. Tex., 2021) Ruiz is not personally sued under the Texas Tort Claims Act, but instead his employer is charged with these tort causes of action.

would not believe her or come to her assistance, especially since one of them

had previously encouraged Ruiz in this behavior.

67.     As a direct and proximate result of the actions of Ruiz, Plaintiff was physically

injured and suffered damages arising under the Texas Tort Claims Act, 28

U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1983 and 1988 and the Fourth and

Fourteenth Amendments of the Constitution of the United States.

68.     Ruiz engaged in conduct with malice and reckless and callous indifference to

the rights of Plaintiff.

69.     Ruiz engaged in this conduct because the City of Arcola allowed him to use

the City of Arcola and Arcola PD property, namely an official vehicle, to

transport female detainees that he had chosen for his sexual schemes and as

part of the customs and practices of the City of Arcola and Arcola PD and the

City of Arcola and Arcola PD are therefore liable for the actions of Ruiz and

others employed by them[3].

_____

[3] The Plaintiff and her counsel are well aware of the parameters of the Texas Tort Claims Act with reference to the negligent use of vehicles; it is the intent of the Plaintiff to argue for the expansion of this law to the use of vehicles in the commission of negligent and/or intentional acts.

## PEACE OFFICER LIABILITY - 42 U.S.C. § 1983

70.    Plaintiff brings a claim against the City of Arcola, Chief Ellison, and Arcola
PD personnel, including but not limited to Ruiz (alone and in concert and/or
individually), pursuant to 42 U.S.C. § 1983 and for punitive damages.

71.    At all material times, the City of Arcola and Arcola PD personnel, including
but not limited to Ruiz (alone and in concert and/or individually) was acting
under color of state law as agents and employees of the City of Arcola and
Arcola PD and alternatively was acting in his individual capacity.

72.    Ruiz was wearing his Arcola PD uniform and was acting in the course and
scope of his duties as a City of Arcola and Arcola PD employee at the time
Plaintiff was sexually assaulted.

73.    Thus, the City of Arcola, Arcola PD, and Ellison's policy of failing to properly
train and supervise, including training on safety and the right of detainees to
be free from sexual assault was inherent. A city may be held liable for its
failure to train a single police officer when the officer's acts were so egregious
that the city should have had a clear warning that the particular officer posed
a danger to citizens. *See Pineda v. City of Houston*, 124 F.Supp. 2d 1057, 1068
(S.D. Tex. 2000).

## **DAMAGES**

74.     Based upon the operative facts plead above, such acts and omissions rise
        to the level of deliberate indifference and conscious indifference constituting
        a violation of the Fourth and Fourteenth Amendments of the Constitution of
        the United States for which Plaintiff seeks recovery. Plaintiff also seeks
        recovery under the Texas Tort Claims Act.

75.     Each and every, all and singular of the foregoing acts and omissions, on
        the part of Defendants, taken separately and/or collectively, jointly, and
        severally, constitute a direct and proximate cause of the injuries and damages
        set forth herein. As a direct, proximate, and foreseeable result of Defendants'
        unlawful conduct, Plaintiff has suffered, and will continue to suffer damages
        in an amount to be proved at trial.

76.     As a direct, proximate, and foreseeable result of Defendants' unlawful
        conduct, Plaintiff has suffered, and will continue to suffer, generally physical,
        mental, and psychological damages in the form of extreme and enduring
        worry, grief, suffering, pain, humiliation, embarrassment, mental anguish, and
        emotional distress in amounts within the jurisdictional limits of this Court, to
        be proved at trial.

77.     Defendants are vicariously liable for their employees, supervisors, officials,
        representatives, and all those acting in concert with them.

78.    Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by 42 U.S.C. § 1988(b). Plaintiff requests that the Court and jury award their attorneys' fees and expenses.

## JURY DEMAND

79.    Pursuant to Federal Rule of Civil Procedure 38(b) Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A.    Enter a declaratory judgment that the policies, practices, acts, and omissions complained of herein violated Plaintiff's rights;

B.    Award compensatory damages for Plaintiff against Defendants, jointly and severally;

C.    Award punitive damages against all individually named Defendants;

D.    Award reasonable attorneys' fees and costs and all litigation expenses, pursuant to federal and state law, as noted against Defendants, jointly and severally pursuant to 48 U.S.C. § 1988;

E.    Award pre- and post-judgement interest; and

F.    Award costs of court;

G.    Retain jurisdiction over Defendant the City of Arcola until such time that the
      Court is satisfied that Defendants' unlawful policies, practices, acts, and
      omissions no longer exist and will not recur; and,

H.    Grant such other and further relief as appears reasonable and just, to which,
      Plaintiff shows herself entitled.


                         Respectfully Submitted,
                         Kallinen Law PLLC

                         /s/ *Randall L. Kallinen*
                         Randall L. Kallinen
                         Kallinen Law PLLC
                         State Bar of Texas No. 00790995
                         U.S. Southern District of Texas Bar No.: 19417
                         511 Broadway Street
                         Houston, Texas 77012
                         Telephone:  713.320.3785
                         FAX:        713.893.6737
                         E-mail:     AttorneyKallinen@aol.com
                         Attorney for Plaintiff